```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 09-80654-Civ-Ryskamp
                                       (07-80005-Cr-Ryskamp)
                              MAGISTRATE JUDGE P. A. WHITE

MANUEL DE JESUS MARTINEZ-GARCIA,    :

        Movant,                     :

v.                                  :         REPORT OF
                                               MAGISTRATE JUDGE

UNITED STATES OF AMERICA            :

        Respondent.                 :
_____
```

This matter is before the Court on the movant's timely filed motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence for conspiracy to possess with intent to distribute one or more controlled substances, entered following a guilty plea in criminal case no. 07-80005-Cr-Ryskamp.

The Court has reviewed the motion with attached memorandum of law (Cv-DE#1), the government's answer (Cv-DE#8), the Pre-sentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

### Claims Raised

Construing the movant's arguments liberally as afforded pro se litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the movant appears to raise the following claims in his §2255 motion:

    1.    The movant was denied effective assistance of trial counsel when his attorney failed to object to

1

inaccuracies in the drug quantity calculation at sentencing, which calculation differed from the drug quantity to which he admitted to during the change of plea hearing. (Cv-DE#1:1).

2. The movant was denied effective assistance of counsel when his attorney failed to argue for a downward departure at sentencing based upon the movant's pretrial confinement conditions. (Cv-DE#1:12).

3. The movant was denied effective assistance of counsel when his attorney failed to argue for a downward departure at sentencing based upon his status as a deportable alien.

<u>Factual History</u>

On January 16, 2008, the movant signed the factual proffer in support of his plea agreement which reads:

> The defendant is one of numerous individuals arrested in connection with the Operation Front Burner wiretap investigation conducted by the WPBRO of the DEA between September 2006 and January 2007. The investigation commenced with a court-authorized wiretap on the cellular telephone of Ranferi Gonzalez-Hernandez, an Atlanta-based cocaine and methamphetamine importer who managed the activities of a West Palm Beach-based distribution organization. Interceptions led DEA agents to identify numerous other participants in Ranferi's organizations, including its primary sources of supply. Through the intercepts, agents also identified Servando Hernandez as an independent cocaine distributor who worked in conjunction with Ranferi's organization to import supplies of narcotics from Mexico. Servando Hernandez's cell phone was targeted in the wiretap investigation and three of his runners/distributors were identified, one of whom is the defendant, Manuel DeJesus Martinez-Garcia.

The others were Martin Renteria-Rivas and Constantino Martinez-Hernandez.

In all, six different telephones (utilized by 4 defendants) were targeted over a period of about 3 ½ months, between September 22, 2006 and January 7, 2006. Throughout the wiretap investigation, agents conducted simultaneous physical surveillance of various targets. This surveillance resulted in numerous seizures of cocaine, methamphetamine and U.S. currency from various individuals, many of whom stand indicted in this case.

The last seizure occurred on December 30, 2006, when couriers Sulma Chavez and Anita Ramos-Pacheco were found in possession of 15 kilograms of cocaine which had just been imported from Mexico. The importation was arranged by Ranferi and co-defendants Servando Hernandez (hereinafter Servando) and Gonzalo Gonzalez-Borja (hereinafter 'Gonzalo'). Following is a proffer of the events preceding the seizure and the defendant's role in the transaction:

On December 18, 2006, a call between Servando and Ranferi was intercepted. During the call, Servando and Ranferi coordinated the importation of multiple kilograms of cocaine from a source of supply in Mexico who goes by the name of 'Chami.' They discussed the quantity of cocaine to order from Chami, and the method and plan for the importation, including the timing (after the holidays). Ranferi told Servando to have 'him' get a care there and do things in a calm way (believed to be referring to Gonzalo acquiring a vehicle in West Palm Beach which would be used by couriers to import cocaine from Chami in Mexico).

Between December 20th, 2006 and December 21st, 2006, a series of calls was intercepted wherein Servando, Ranferi and Borja discussed the courier trip. Through these calls, agents were able to discern that the couriers would be two or more females. During one call, Borja advised Servando that the courier vehicle would be a 2001 Ford Sport Trak and provided Servando with the VIN number. The plan was for the girls to depart West Palm Beach in the courier vehicle, retrieve the cocaine in Mexico, then drive back to West Palm Beach.

Approximately one week later, on December 28, 2006 (5:45 p.m.), Servando called Ranferi. Ranferi told Servando

3

that they were moving already (referring to the couriers). Through subsequently intercepted calls, agents were able to discern that the couriers had crossed the United States/Mexico border, and were due to arrive in West Palm Beach on or about December 30, 2006. During calls intercepted on December 30, 2006 between Servando and one of the couriers, later identified as co-defendant Sulma Chaves, agents learned that they had planned to meet at the El Bodegon shopping center, in the vicinity of Forrest Hill Blvd and Military Trail, in West Palm Beach, Florida, in the Southern District of Florida. During one of these calls, Chaves told Servando that she was at the meet location but that there were cops in the area. After talking to Chaves, Servando called Ranferi and told him that the girls called and said there were police in the area. Ranferi instructed Servando to send someone to go by and take a look. Servando said he would send someone. Servando then called the defendant, Manuel Martinez-Garcia and told him to drop by El Bodegon and take a look because the girls (Chaves and Ramos-Pacheco) had just arrived and something happened.

At approximately 12:00 noon on December 30, 2006, agents established at El Bodegon shopping center. They observed a Ford Sports Track arrive in the parking lot. The driver of the Sports Track (later identified as Sulma Chaves) exited the vehicle, and moments later, was picked up by another female driving a grey VW Jetta (later identified as Anita Ramos-Pacheco). After further surveillance (at approximately 12:56 p.m.), PBSO marked units conducted a traffic stop of the Jetta, encountering Ramos-Pacheco and Chaves. Ramos-Pacheco claimed ownership of both the Jetta and the Sports Track. She provided written consent to search both vehicles. A further search of the Sports Track revealed a single kilogram-sized package of suspected cocaine underneath the rear window area of the vehicle. At this time Ramos-Pacheco was arrested on state charges, and the vehicle was impounded. Later, the vehicle was more thoroughly searched and found to contain 11 kilogram-sized packages, and 8 half-kilogram-sized packages (for a total of 15 kilograms of cocaine). A presumptive field test of the substance proved positive for the presence of cocaine, and subsequent laboratory analysis confirmed that the substance was cocaine with a total net weight of 15 kilograms. As the surveillance and traffic stop were in progress, a call was intercepted between Ranferi and Servando wherein Servando advised Ranferi that 'Manuel' (the defendant) had called

4

(apparently from the scene of the traffic stop), and Manuel had reported to Servando that they (the police) already had dogs.

At the time that arrests and search warrants were executed in the Operation Front Burner investigation, the defendant's full identify was not known. The original indictment charged him as 'Manuel LNU.' Agents had secured a search warrant for a residence located at 6419 Alexander Road, in Palm Beach County, and only later discovered that the target known as Manuel LNU lived there. Agents established surveillance at the Alexander Street address before the search. They observed a vehicle leaving the residence and conducted a traffic stop. The defendant was driving and there were 2 passengers in the car. An agent familiar with the voices of those intercepted during the wiretap investigation arrived on scene, spoke to the defendant, and determined that he was 'Manuel LNU.' The car was searched and found to contain a grocery bag full of bulk cash.

During a search of the defendant's residence on Alexander street, the following items were found in the kitchen: 2 bottles of inositol (a commonly-used cutting agent for cocaine), acetone (also commonly used in the cutting process), 10 boxes of ziploc bags, 2 beverage containers with hidden compartments, strainers, gloves, shrink wrap, and baking soda (commonly used in conversion of powder cocaine to crack). The following items were found in the defendant's bedroom: identification for Manuel Martinez-Garcia, personal correspondence for the defendant, a drug ledger.

At the defendant's Alexander Street residence, a slightly worn walkway was discovered in the grass behind the house in the backyard. It led to bushes. Hidden in the bushes was a cardboard box. Inside the box agents found two clear resealable plastic bags containing suspected powder cocaine. Also in the box were two digital scales and cutting agent. The drug exhibits seized from the box was submitted to the DEA laboratory for analysis. The analyst concluded that the exhibits consisted of cocaine hydrochloride with a total net weight of 470.4 grams, and cocaine base with a total net weight of 30 grams. Additionally, a latent fingerprint was recovered from one of the clear plastic bags which contained powder cocaine. An expert in fingerprint identification confirmed that the latent print from the drug packaging matched known

inked fingerprints of the defendant.

(Cr-DE#422).

## Procedural History

The procedural history of the underlying criminal case reveals that on January 16, 2008, the movant entered into a written negotiated plea agreement, wherein he pleaded guilty to Count One of the Second Superseding Indictment which charged him with conspiracy to possess with intent to distribute at least five kilograms of cocaine or 500 grams or more of methamphetamine, in violation of 21 U.S.C. §846 and §841(a)(1), (b)(1)(A). (Cr-DE#422).

A PSI was prepared in anticipation of sentencing wherein the probation officer determined that the movant was responsible for 15.537 kilograms of cocaine and 30 grams of cocaine base. (PSI¶109). Pursuant to §2D1.1, comment.(n.6), where there are multiple transactions or multiple drug types, the quantities of drugs are to be added. (Id.). According to Drug Equivalency Tables in §2D1.1, 15.537 kilograms of cocaine equals 3,107.4 kilograms of marijuana, and 30 grams of cocaine base equals 150 kilograms of marijuana. (Id.). Accordingly, the defendant was responsible for the equivalent of 3,257.4 kilograms of marijuana. (Id.). The guideline for 21 U.S.C. §§846 and 841(a)(1) is found in §2D1.1(a)(3) of the guidelines, which provides that an offense involving at least 3,000 kilograms but less than 10,000 kilograms of marijuana has a base offense level of 34. (PSI¶110). Thus, the movant's total offense level was set at 34. (PSI¶118).

The probation officer further determined the movant had zero criminal history points and a criminal history category of I. (PSI¶121). Based on a total offense level of 34 and a criminal

history category of I, the guideline imprisonment range was 151 to 188 months. (PSI¶148).

Thereafter, because the movant on April 28, 2008, submitted to the probation officer an acceptance of responsibility statement, which gave rise to a two level reduction pursuant to U.S.S.G. §3E1.1. (PSI Second Addendum). Also on that same day, the movant provided the government a signed statement describing his participation in the conspiracy. (Cr-DE#422). Accordingly, the movant was eligible for an additional two level safety valve reduction pursuant to U.S.S.G. §2D1.1(b)(11). Thus, the movant's total adjusted base offense level was 29, which, with a criminal history category of I, his new advisory guideline range was set between 87 and 108 months imprisonment.

The following day, on April 29, 2008, the movant appeared for sentencing wherein he was sentenced to 87 months imprisonment, followed by five years of supervised release and a special assessment of $100. (Cr-DEs#491,494). The Clerk entered judgment on May 8, 2008. (Cr-DE#494). No direct appeal ensued. The judgment of conviction in the underlying criminal case became final at the latest on May 22, 2008, ten days after the entry of the amended judgment (Cr-DE#494), when time expired for filing a notice of appeal.[1] At the latest, the movant was required to file this motion

---

[1]Where, as here, a defendant does not pursue a direct appeal, the conviction becomes final when the time for filing a direct appeal expires. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). The time for filing a direct appeal expires ten days after the judgment or order being appealed is entered. Fed.R.App.P. 4(b)(1)(A)(I). The judgment is "entered" when it is entered on the docket by the Clerk of Court. Fed. R. App. P. 4(b)(6).

On December 1, 2002, Fed.R.App.P. 26; which contains the rules on computing and extending time, was amended so that intermediate weekends and holidays are excluded from the time computation for all pleadings due in less than 11 days. The judgment was entered by the Clerk on December 19, 2006, so the movant had until January 4, 2007, within which to timely file a notice of

to vacate within one year from the time the judgement became final, or no later than May 22, 2009. See <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986). The movant signed and executed this motion to vacate on April 27, 2009. (Cv-DE#1). Therefore, it appears that this motion is timely.

### Discussion of Claims

First, it should be noted that the foregoing claims, could have been, but were not raised on direct appeal. Notwithstanding, construing the arguments made by the movant in support thereof, he appears to argue that counsel was ineffective for failing to pursue the claims. A claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. <u>United States v. Breckenridge</u>, 93 F.3d 132 (4th Cir. 1996). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Thus, each claim will be identified and treated in turn in this Report, <u>infra</u>.

In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. <u>Id.</u> at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11th Cir. 1995). Prejudice in the sentencing context requires a showing that the

---

appeal.

sentence was increased due to counsel's error. Glover v. United States, 531 U.S. 198, 203-04 (2001).

In the context of a case in which guilty pleas or the equivalent were entered, application of the second prong of the two-pronged Strickland standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985). The movant does not claim that but for counsel's alleged deficient performance, he would not have pleaded guilty and would have proceeded to trial.

Moreover, review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11th Cir. 1994).

In **claim one**, the movant asserts he was denied effective assistance of trial counsel when his attorney failed to object to inaccuracies in the drug quantity calculation at sentencing, which calculation differed from the drug quantity to which he admitted to during the change of plea hearing. (Cv-DE#1:1).

In support thereof, the movant appears to argue that his

sentence is an <u>Apprendi</u>[2] error, although the movant admits that his sentence did not exceed beyond the statutory maximum, however, he argues that he never pleaded guilty to 15.537 kilograms of cocaine and 30 grams of cocaine base. (Cv-DE#1:8). As may be recalled, the movant pleaded guilty to Count One which charged him with conspiracy to possess with intent to distribute at least five kilograms of cocaine or 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§846 and 841(a)(1),(b)(1)(A). Title 21 U.S.C. §841 provides for a statutory minimum of 10 years imprisonment and statutory maximum of life imprisonment. The record in this case reflects that the movant was sentenced to 87 months imprisonment, below the 10-year statutory minimum. The rule of <u>Apprendi</u> would not apply, since the movant was sentenced to a term within the statutory maximum. <u>United States v. Rodriquez</u>, 279 F.3d 947, 950, n.2 (11th Cir. 2002); <u>citing</u>, <u>United States v. Sanchez</u>, 269 F.3d 1250, 1262 (11th Cir.2001); <u>United States v. Smith</u>, 240 F.3d 927, 929 (11th Cir. 2001); <u>United States v. Gerrow</u>, 232 F.3d 831 (11th Cir. 2000); <u>United States v. Rogers</u>, 228 F.3d 1318 (11th Cir.2000). Thus, where a specific drug type or amount triggers a mandatory minimum sentence or factors into a Sentencing Guidelines calculation, resulting in a sentence at or below the otherwise applicable maximum penalty in 21 U.S.C. §841(b)(1)(C), no <u>Apprendi</u> error exists.

To the extent the movant argues that he never stipulated to the drug amount, this claim is without merit. The PSI held the movant accountable for 15.537 kilograms of cocaine and 30 grams of crack cocaine. (PSI¶95). Consistent with the drug quantity he was held accountable, the movant signed a written statement of facts in support of his guilty plea, which in pertinent part determined the movant's role in the attempted possession of 15 kilograms of

---

[2]<u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

cocaine imported by two female couriers on December 30, 2006 and the events wherein the agents found and seized 537 grams of cocaine and 30 grams of crack cocaine. (Cr-DE#422). Thereafter, the movant pleaded guilty to a *conspiracy involving 5 kilograms or more* of cocaine or 500 grams or more of methamphetamine and therefore, all of the narcotics he was involved with was properly attributed to him as relevant conduct at sentencing. In the offense, the movant's role was to conduct counter-surveillance once the couriers arrived in West Palm Beach with the loaded vehicle. Under the Pinkerton theory, the movant remained liable for the reasonably foreseeable actions of his coconspirators despite whether he had actual knowledge of the quantity of cocaine in the vehicle. Pinkerton v. United States, 328 U.S. 640 (1946).

Moreover, although the movant is correct that during his change of plea hearing there was no mention as to the drug amount he was held accountable, nonetheless, during the hearing he did, under oath, inform the Court that he read and signed the stipulated facts. (Cr-DE#541:6). Also during the change of plea hearing, the movant acknowledged that he understood and agreed with the factual proffer that was presented by the United States Attorney's Office that could lead to a conviction. (Id.).

Moreover, even if it can be determined that counsel was deficient for failing to object, the movant fails to demonstrate prejudice as a result therefrom. Likewise, the movant fails, in light of the plea agreement, the factual proffer and his attestations under oath during the change of plea hearing, to show that had counsel objected to the amount of drugs attributed to him, the court would have sustained said objection. Under these circumstances, no deficient performance or prejudice has been established pursuant to Strickland, supra, and the movant is

11

therefore entitled to no relief on the claims.

To the extent the movant argues that after the conclusion of the plea colloquy, his attorney presented him with a different plea agreement wherein the government "scratched out 15 kilograms with a pen and inserted 5 kilograms," and then counsel provided the documents for the movant to sign, this claim is without substantiation. A review of the plea agreement, along with the attached factual proffer, fails to reflect any such changes. However, the movant's safety valve statement does, in fact, reflect handwritten changes on the last paragraph. (See Cv-DE#8,Ex.B:2). The movant's signature appears next to the edited statement. (Id.). Notwithstanding the edited document, the movant fails to demonstrate how any changes thereto resulted in either deficient performance by counsel or prejudice therefrom. This claim is without merit.

In **claims two**, the movant asserts his attorney failed to argue for a downward departure at sentencing based upon his pretrial confinement conditions. (Cv-DE#1:12).

Pursuant to U.S.S.G. §5K2.0, a sentencing court may depart downward if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." U.S.S.G. § 5K2.0, quoting 18 U.S.C. § 3553(b).

The Eleventh Circuit had held that a court may grant a downward departure under § 5K2.0 when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); United States

Sentencing Commission, Guidelines Manual, § 5K2.0 (Nov. 1998); United States v. Smith, 289 F.3d 696, 710 (11th Cir. 2002). In determining whether to grant such a departure, the district court considers two questions: (1) whether any circumstance makes the case atypical, meaning that it takes the case out of the "heartland" of cases involving the conduct described in the applicable guideline; and (2) whether that circumstance should result in a different sentence. United States v. Requeiro, 240 F.3d 1321, 1324 (11th Cir. 2001).

Although the Eleventh Circuit has held that conditions of confinement may provide the basis for a downward departure pursuant to U.S.S.G. §5K2.0, it acknowledged that there is little guidance as to the type of conditions which warrant such a departure. See United States v. Pressley, 345 F.3d 1205, 1218 (11th Cir. 2003). In Pressley, the court noted that departures are generally granted only when conditions of confinement are atypical or extraordinarily extreme, and generally denied when conditions do not fall outside the norms experienced by the average prisoner. Id. at 1218-19. Where there is no evidence that the conditions of pretrial confinement are so substandard or onerous as to take the case outside the heartland of cases, a downward departure based on conditions of pretrial confinement is not warranted. See United States v. Dyck, 334 F.3d 736, 743 (8th Cir. 2003); see also, United States v. Brown, 95 F.Supp.2d 277 (E.D. Pa. 2000)(departure based on pretrial detention not warranted where defendant alleged that the jail was crowded, there was poor food, noise, and inadequate law library).

In this case, no showing has been made that had the argument been articulated at sentencing, that the court would have found that the movant's pretrial detention was such that it took his case

13

outside the heartland of cases. Under these circumstances, the movant has failed to establish prejudice pursuant to Strickland arising from counsel's failure to pursue this argument at sentencing, and is thus entitled to no relief on the claim.

In **claim three**, the movant asserts he was denied effective assistance of counsel when his attorney failed to argue for a downward departure at sentencing due to his status as a deportable alien. (Cv-DE#1:14).

Counsel was not ineffective for failing to request a downward departure based on the movant's status as an alien, as it would not have succeeded. See United States v. Maung, 320 F.3d 1305, 1309 (11th Cir. 2003)(Downward departure not proper if based on a desire to shield a defendant from immigration consequences of conviction). The fact that a defendant's status as an alien renders him ineligible to serve any part of his sentence in a halfway house or receive other preferred conditions of confinement does not justify a downward departure. United States v. Veloza, 83 F.3d 380, 382 (11th Cir. 1996)(*overruled on other grounds*, United States v. Campbell, 181 F.3d 1263 (11th Cir.1999)); United States v. Restrepo, 999 F.2d 640 (2d Cir. 1993); see also, United States v. Lopez-Salas, 266 F.3d 842, 846-847, 849-51 (8th Cir. 2001)(although the increased severity in the conditions of confinement resulting from alien status is a possible basis for departure, such a departure would be "only appropriate in exceptional circumstances, such as where there is a substantial, undeserved increase in the severity of conditions of confinement, which would affect a substantial portion of a defendant's sentence").

Moreover, the Eleventh Circuit has held that a defendant is required to proffer a nonfrivolous defense to deportation before

his consent to deportation could constitute mitigating circumstance warranting a downward departure under §5K2.0, resulting in the imposition outside the range established by the applicable Sentencing Guidelines. United States v. Mignott, 184 F.3d 1288, 1291 (11th Cir. 1999)(requiring defendants to proffer a nonfrivolous defense to deportation before recognizing consent to deportation as a ground for departure); see also: United States v. Marin-Castaneda, 134 F.3d 551, 555 (3d Cir. 1998); United States v. Gonzalez-Portillo, 121 F.3d 1122 (7th Cir. 1997). In this case, the movant has failed to proffer a non-frivolous defense to deportation, and any request for a downward departure on that ground would have failed. Consequently, counsel was not ineffective for failing to pursue this nonmeritorious claim.

Under these circumstances, the movant has failed to establish prejudice pursuant to Strickland arising from counsel's failure to further pursue this claim at sentencing. He is thus entitled to no relief on the claim.

### Evidentiary Hearing

The movant's final request for an evidentiary hearing on his claim should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported, generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

### Conclusion

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 12th day of November, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Manuel De Jesus Martinez-Garcia, <u>Pro Se</u>
Reg. No. 72656-004
Moshannon Valley, C.C.
Unit B-4
555 I Cornell Drive
Philipsburg, PA 16866

Anne Ruth Schultz, AUSA
United States Attorney's Office
99 NE 4th Street
Miami, FL 33132

Nancy Vorpe Quinlan, AUSA
United States Attorney's Office
500 South Australian Avenue
Suite 400
West Palm Beach, Fl 33401